UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-21493-KMM/JB
1:18-cr-20955-KMM

LOUDY PETITHOMME,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** came before the Court upon Loudy Petithomme's ("movant" or "Mr. Petithomme") Motion to Vacate, Set Aside, or Correct Sentence ("Motion") and Memorandum in support thereof (the "Memorandum"), pursuant to 28 U.S.C. § 2255. Motion (DE# 1, 3/25/20); Memorandum (DE# 3, 3/25/20). The United States of America ("Government") responded to the Motion ("Response"). Response (DE# 8, 4/22/20). Mr. Petithomme filed his Reply to the Government's Response on May 13, 2020. Reply (DE# 13, 5/13/20). Therefore, the Motion is ripe for disposition. After careful review of the Motion, Response, Reply, the relevant authorities, the record, and for the reasons discussed below, it is hereby **RECOMMENDED** that Loudy Petithomme's Motion to Vacate, Set Aside, or Correct Sentence and Memorandum in support thereof (the "Motion"), pursuant to 28 U.S.C. § 2255. (DE# 1, 3, 3/25/20) be **DENIED**.

    **I.**    **BACKGROUND**

On December 13, 2018, Mr. Petithomme and three co-defendants were indicted by a grand jury with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (count 1) and money laundering in violation of 18 U.S.C. § 1957 (counts 2–20). See United States v.

1

Peterson, No. 1:18-cr-20955-KMM (S.D. Fla. Jan. 7, 2014) (CR-DE# 3, 12/14/18) ("Criminal Case").[1] On April 11, 2019, in the Superseding Indictment, Mr. Petithomme was charged with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (count 1) and money laundering in violation of 18 U.S.C. § 1957 (counts 2–9). Superseding Indictment (CR-DE# 68, 4/12/19).

On April 29, 2019, pursuant to a written plea agreement and factual proffer, Mr. Petithomme pled guilty to Counts 1 and 5 of the Superseding Indictment. Plea Agreement (CR-DE# 83, 4/29/19); Factual Proffer Statement (DE# 84, 4/29/19). With Mr. Petithomme's consent, Magistrate Judge Jacqueline Becerra conducted the plea colloquy on April 29, 2019. Plea Colloquy Tr. at 8 (CR-DE# 159, 9/19/19). During the plea colloquy, Mr. Petithomme stated under oath that he had reviewed with his attorney the charges in the Superseding Indictment, the discovery in the case, and possible defenses to the charges; that his attorney answered his questions to his satisfaction; that there were no outstanding legal research, investigation, or witness interviews that Mr. Petithomme had requested his attorney to complete; and that he was fully satisfied with his attorney and the advice and representation he had provided. Id. at 9-11.

Additionally, Mr. Petithomme stated that he reviewed the plea agreement with his attorney, that his attorney answered all of his questions, and that he believed he fully understood what was in the plea agreement. Id. at 17-18; (CR-DE# 83). Paragraph 8 of the plea agreement set forth the agreed upon base offense level and loss amount (greater than $1,500,000 and less than $3,500,000), and that no role adjustment would be sought. Plea Agreement at ¶ 8 (CR-DE# 83, 4/29/19). Paragraph 8 also specifically addressed the enhancement for business of laundering funds:

---

[1] References to the electronic docket in Mr. Petithomme's Criminal Case will be designated "(CR-DE# __)."

> This Office [of the United States] specifically reserves the right to argue for the application of any other enhancements under the Sentencing Guidelines, including, specifically, an enhancement under Section 2S1.1(b)(2)(C) for being in the business of laundering funds, and/or an enhancement under Section 2S1.1(b)(3) for sophisticated laundering.

Id. During the plea colloquy, the Court specifically discussed this language with Mr. Petithomme and explained that the Government was reserving the right to argue for the business of laundering enhancement or sophisticated laundering enhancement at the sentencing hearing. Plea Colloquy Tr. at 21-22 (CR-DE# 159, 9/19/19). Mr. Petithomme acknowledged that he understood. Id.

At the plea hearing, the Government read and submitted a written factual proffer, (CR-DE# 84, 4/29/19), setting forth the factual basis for the entry of the plea. Id. at 30-35. Mr. Petithomme agreed that the Government could prove those facts at trial. Id. The factual proffer established, *inter alia*, that from September 2015 through June 2018, the movant incorporated numerous corporate entities, including PDU Enterpri$e Inc. (a/k/a PDU Enterprise Inc.), PDU Global LLC, and Millenial Development Inc. Id. The factual proffer also established that the movant opened bank accounts in the name of these corporate entities and used the bank accounts to launder proceeds from numerous victims, including Y.T.V., L.P., R.T., S.H., N.G., and F.A.T. Id. Thereafter, Mr. Petithomme entered his plea of guilty before the Court as to counts one and five of the Superseding Indictment. Id. at 37; Plea Agreement (CR-DE# 83, 4/29/19).

At the end of the plea colloquy, based on Mr. Petithomme's testimony, the Court noted that Mr. Petithomme had the advice and counsel of a competent lawyer, with whom he was satisfied, and recommended that the district court accept his guilty plea. Plea Colloquy Tr. at 37-38 (CR-DE# 159, 9/19/19). The Court postponed sentencing until July 18, 2019, before District Court Judge Michael K. Moore. Id. at 38.

On June 13, 2019, the Draft Pre-Sentence Investigation Report ("PSI") was prepared prior to Mr. Petithomme's sentencing and set forth the offense conduct of Mr. Petithomme and his co-

conspirators. PSI at ¶¶ 9-47 (CR-DE# 109, 6/13/19). The PSI outlined Mr. Petithomme's incorporation of various corporate entities; Mr. Petithomme's opening of bank accounts in the names of those entities; and the flow of victim proceeds through those bank accounts as well as the bank accounts of co-conspirators. Id.

> Paragraphs 92 and 93 of the PSI describe the movant's employment record as follows:
>
> 92. The defendant reported that he is self-employed. He stated that he owns Conception Enterprises, which operates … in Miami. The business is a thrift store, that sells second [hand] clothing. The business was started by his family and he has worked there since 1998, but he took over the operations of the business in 2012. The defendant further informed that he earns approximately $4,000 per month in salary. He does not have employees and his monthly expenses or inventory, rent and utilities total $4,000 per month. The business' only asset[ ] is the inventory that he has to sell, and he could not estimate the current value of the inventory. According to the State of Florida, Division of Corporations (SFDC), the defendant incorporated Conceptions Mondiales Enterprise, Inc. on August 11, 2017, … in Miami. The defendant is listed as the president of the company. The defendant was asked to provide copies of his business income tax returns that he filed with the Internal Revenue Service which are pending receipt.
>
> 93. The SFDC also revealed the following corporations that were incorporated by the defendant PDU Global, LLC; PDU Corp; PDU Enterpri$e, Inc.; and Millennial Enterpri$e, INC. … which have all been [administratively] dissolved for failure to file an annual report. Additionally, SFDC also reported that the defendant has the following additional active corporations: Millenial Development, Inc. and E&J Wholesale, Inc. It is further noted that PDU Enterpri$e, PDU Global and Millenial Development, Inc. were corporations utilized in the instant offense, as detailed in The Offense Conduct section above.

PSI at ¶¶ 92-93 (CR-DE# 99, 6/13/19).

> In his Acceptance of Responsibility statement, Mr. Petithomme acknowledged:
>
> … I allowed illegally obtained monies to be deposited in my bank account and would then transfer the proceeds to my co-conspirators. The conduct includes fraudulent activities, real estate documents and receiving wire transfers relating to fraudulent activities where funds were received and transferred to my co-defendant's account. Additionally, I admit that I opened up a bank account with JP Morgan Chase, using [a] phony name of SJ Vanity Inc. using an alias [of] JA. I agree that the conduct that I engaged in was done willfully and that I committed the crimes to wit I pled guilty.

Id. at ¶ 57; see id. at ¶ 33 ("JPMorgan Chase surveillance photographs show Petithomme opening the account in the name of SJ Vanity, Inc. using an alias, 'J.A.'").

4

The PSI calculated a base offense level of twenty-four pursuant to USSG § 2S1.1(a)(2) and recommended a four-point enhancement under USSG § 2S1.1(b)(2)(C) for being in the business of laundering funds. Id. at ¶¶ 58-60. The PSI recommended that Mr. Petithomme's offense level be reduced by three points for acceptance of responsibility (Id. at ¶¶ 66-67), for a total offense level of twenty-five. Id. at ¶ 68. With a criminal history category of I, Mr. Petithomme's guideline range was fifty-seven (57) to seventy-one (71) months. Id. at ¶ 100.

On June 18, 2019, Mr. Petithomme's counsel, Larry R. Handfield ("Mr. Handfield"), moved the court for additional time in which to file objections to the PSI. (CR-DE# 101, 6/18/19). On June 25, 2019, Mr. Handfield submitted, via email, the objections to the PSI.[2] (CR-DE# 109–1, 6/25/19). Mr. Handfield objected to paragraph sixty (60), regarding the four-point enhancement that was recommended because Mr. Petithomme was in the business of laundering funds. Id. Specifically, Mr. Handfield objected to the four-point enhancement on the basis that it was overstating Mr. Petithomme's punishment, given that he had already received a sixteen-point enhancement based on the amount of money involved in the conspiracy. PSI Addendum (CR-DE# 109-1, 7/10/19) (stating Mr. Petithomme's objection to the enhancement). Mr. Petithomme did not raise any factual objections to the PSI.

On July 15, 2019 the Government responded to Mr. Petithomme's objections, arguing that the business of laundering funds enhancement applied on the facts of Mr. Petithomme's case. (CR-DE# 115, 7/15/19). Specifically, the Government argued that the facts showed that Mr. Petithomme had laundered funds from October 2015 through June 2018; that he had laundered funds from numerous victims; that he generated substantial revenue in return for laundering funds; and that money laundering was his main business, as he received negligible income from his

---

[2] The movant's objections were not filed in the Criminal Docket until July 10, 2019 as part of the PSI Addendum. (CR-DE# 109, 7/10/19).

legitimate business enterprise. Id. at 3–4. The Government argued further that Mr. Petithomme's own tax returns for tax years 2016 and 2017, while he was laundering and retaining victim proceeds, claimed gross income of only $9,944 each year. Id. at 4 (citing PSI at ¶ 97). The Government explained that the business that supported Mr. Petithomme was the business of money laundering and the Court should impose the business of laundering funds enhancement. Id.

The Addendum to the PSI restated that the business of laundering funds enhancement applied based on the factors set forth in USSG § 2S1.1, Application Note 4(B) and the uncontested facts of the PSI:

> As noted in the [PSI], the defendant regularly engaged in laundering funds during an extended period of time, he engaged in laundering funds from multiple sources, generated a substantial amount of revenue, and he received victim funds that had been laundered through codefendants' accounts, as explained throughout the Offense Conduct Section of the [PSI].

PSI Addendum (CR-DE# 109-1, 6/26/19). The Addendum to the PSI maintained that the business of laundering funds enhancement applies to Mr. Petithomme. Id.

At the sentencing hearing held on July 18, 2019, Mr. Handfield stated his objections to the PSI were "based upon fairness and over-punishment." Sentencing Tr. at 9 (CR-DE# 144, 7/18/21). Mr. Handfield did not object to the PSI on factual grounds. Id. at 10. Instead, Mr. Handfield argued that the additional four-point enhancement would be overly severe considering that Mr. Mr. Petithomme was already receiving a 16-point enhancement for laundering more than $1,500,00.00. Specifically, Mr. Handfield argued that the movant barely met the threshold amount ($1,500,000.00) and an additional 4-point enhancement would be "overly severe, based upon the law and facts and just fairness." Id. at 9. The Court noted that probation's calculated guideline range of 57 to 71 months (i.e. 5 to 6 years) is substantially below the 20-year statutory maximum for Count 1. Id. at 9-10. The Court noted and denied Mr. Handfield's objection. Id. at 10. The

Court then sentenced Mr. Petithomme to fifty-seven (57) months in prison as to counts one and five. Id. at 12.

Following his sentencing, Mr. Petithomme filed a Notice of Appeal on September 1, 2019, (CR-DE# 145, 9/1/19). On November 27, 2019, pursuant to Mr. Petithomme's motion for voluntary dismissal, the Eleventh Circuit dismissed Mr. Petithomme's appeal. (CR-DE# 185, 11/27/19).

On March 25, 2020, Mr. Petithomme filed the subject Motion seeking relief pursuant to 28 U.S.C. § 2255. (DE# 1, 3/25/20). Specifically, Mr. Petithomme's Motion seeks relief based on the allegation that Mr. Handfield rendered constitutionally ineffective assistance of counsel as to Mr. Petithomme's objection to the application of the business of laundering funds enhancement under USSG § 2S1.1(b)(2)(C).

In its Answer to the Motion, the Government argues that Mr. Petithomme's claim fails to meet the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Answer at 7-12 (DE# 8, 4/22/20). Specifically, the Government argues that the movant cannot satisfy the prejudice prong under Strickland because based on "the uncontested facts of the factual proffer and the [PSI], the business of laundering funds enhancement applies" and, therefore, the movant "cannot show a reasonable probability of a different outcome." Id. at 9. Additionally, the Government argues that the movant also failed to establish Strickland's first prong of deficient performance because his prior counsel legally objected to the business of laundering funds enhancement. Id. at 12.

In the Movant, Loudy Petithomme's Reply to Government's Answer to Motion to Vacate, Set Aside, or Correct Sentence pursuant to Title 28 U.S.C. § 2255 (DE# 13, 5/13/20), the movant clarifies that his Section 2255 motion is based on the sole ground that his prior counsel was ineffective because he "did not competently prepare written objections or research those

7

objections, nor did his argument rise to the level of required professional competence at the sentencing hearing." Reply at 2 (DE# 13, 5/13/20).  The movant contends that his satisfaction with his prior counsel up to and through the change of plea hearing is "wholly irrelevant because the allegations are that counsel's ineffectiveness was his failure to adequately object to the 'in the business of money laundering' sentencing enhancement" and "that the [PSI's] sentencing guidelines calculation did not even exist at that time."  Reply at 3 (DE# 13, 5/13/20).  The motion is ripe for disposition.

## II.  EVIDENTIARY HEARING

In a footnote in its Answer, the Government states that Mr. Petithomme "has not requested an evidentiary hearing, nor is he entitled to one."  Answer at 8 n.3 (DE# 8, 4/22/20).  The Government argues that "Section 2255 provides that a district court shall grant a hearing to determine the issues and make findings of fact and conclusions of law unless the motion, files and records of the case conclusively show that the prisoner is entitled to no relief, 28 U.S.C. § 2255(b), which is the case here."  Id.

Subsequently, on April 27, 2020, Mr. Petithomme filed Movant, Loudy Petithomme's Notice of Request for Evidentiary Hearing upon His Motion to Vacate, Set Aside, or Correct Sentence pursuant to Title 28 U.S.C. § 2255. (DE# 11, 4/27/20).  Mr. Petithomme claims that it was unnecessary for him to request an evidentiary hearing and filed his request in an abundance of caution. Request at 2 (DE# 11, 4/27/20).  To support his request for an evidentiary hearing, Mr. Petithomme argues that "there are matters outside of the motion, files, and records of the case that demonstrate that the Movant is entitled to relief."  Id.  Mr. Petithomme contends that "there are various communications between counsel and the Movant that should be presented to the Court as well as to show the proper context in which said communications were made."  Id.  "Additionally,

… it would be necessary to place the Movant's counsel under oath so as to enable the Movant to demonstrate that there is no sound professional basis for the manner in which the Movant's desired objection to the severe enhancement for 'being in the business of laundering money' was grossly ineffectively presented to the Court by counsel at the sentencing hearing." Id.

To be entitled to an evidentiary hearing on a section 2255 habeas claim, the petitioner must allege facts that, if proved at the hearing, would entitle him to relief. See Schriro v. Landrigan, 550 U.S. 465, 474-75 (2007) (holding that "if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"). The Court must hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Anderson v. United States, 948 F.2d 704, 706 (11th Cir. 1991).

"[T]he general rule in [the Eleventh Circuit is] that ineffective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." Holmes v. United States, 876 F.2d 1545, 1552 (11th Cir. 1989) (citation omitted). In Holmes, the Eleventh Circuit further explained that "this rule does not require that the district court hold an evidentiary hearing every time a section 2255 petitioner simply asserts a claim of ineffective assistance of counsel: 'A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required when the petitioner's allegations are affirmatively contradicted by the record.'" Id. at 1553 (quoting Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979)).

The "decision to grant an evidentiary hearing [is] left to the sound discretion of [the] district courts." Schriro, 550 U.S. at 473 (citations omitted). "[A] federal court must consider

9

whether such a hearing could enable an applicant to prove the petitioner's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro, 550 U.S. at 474 (citation omitted).  Mr. Petithomme has not submitted any sworn statements outside the record to support his request for an evidentiary hearing and has failed to show that he would be entitled to relief.  Thus, an evidentiary hearing is not warranted. For this reason, the undersigned concludes that Mr. Petithomme's request for an evidentiary hearing on his ineffective assistance of counsel claim should be **DENIED**.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that: (1) his counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) he suffered prejudice resulting from that deficiency.  Strickland v. Washington, 466 U.S. 668, 687–88 (1984).  Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable.  Id. at 690–91. "Judicial scrutiny of counsel's performance must be highly deferential" because there are "countless ways to provide effective assistance in any given case." Id. at 689.  Even the best criminal defense attorneys would not defend their client in the same ways. Id.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. at 694.  A court need not address both prongs of Strickland if the defendant makes an insufficient showing on one of the prongs.  Id. at 697; see also Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013); and Dingle v. Sec'y for Dep't of Corrs., 480 F.3d 1092, 1100 (11th Cir. 2007). Strickland's two-part inquiry extends to ineffective assistance of counsel arising from the plea process. Missouri v. Frye, 566 U.S. 134, 147-48 (2012); Lafler v. Cooper, 566 U.S. 156, 162-164 (2012).

When assessing counsel's performance under Strickland, the court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. "The burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was [objectively] unreasonable." Chandler v. U.S., 218 F.3d 1305, 1313 (11th Cir. 2000) (citing Strickland, 104 S. Ct. at 2064; and Williams v. Taylor, 120 S. Ct. 1495, 1511 (2000)). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corrs., 697 F.3d 1320, 1332–34 (11th Cir. 2012).

## IV.   ANALYSIS

On March 25, 2020, Mr. Petithomme filed the subject Motion seeking relief pursuant to 28 U.S.C. § 2255. Motion (DE# 1, 3/25/20). Specifically, Mr. Petithomme's Motion seeks relief based on the allegation that Mr. Handfield rendered constitutionally ineffective assistance of counsel as to Mr. Petithomme's objection to the application of the business of laundering funds enhancement under USSG § 2S1.1(b)(2)(C). Mr. Petithomme contends that Mr. Handfield's substandard argument, coupled with his failure to factually dispute the PSI, amounted to ineffective assistance of counsel. Memorandum at 6 (DE# 3, 3/25/20).

Mr. Petithomme argues that his defense counsel ignored the lack of facts to support the business of laundering funds enhancement. Id. The movant maintains that he was not in the business of laundering funds because he was involved in many other businesses. The movant relies on paragraphs 92 and 93 in the Employment Record section of the PSI to support his position that he was actively involved in wholly legitimate business during the relevant time period. Id. at 11; see PSI at ¶¶ 92, 93 (CR-DE# 109, 6/13/19).

By failing to raise factual objections to the enhancement, Mr. Petithomme argues further that his defense

> counsel relieved the Government of its burden to prove disputed facts by a preponderance of the evidence and relieved the Court of its obligation to find that the Government had fulfilled its burden.  As a result, no evidence whatsoever was presented by the Government to support the enhancement.

Id.  In addition, Mr. Petithomme argues that he was prejudiced by Mr. Handfield's deficient performance by exposing him to a far greater sentence. Id. at 7. The movant argues that the application of an enhancement is always based on the facts of a particular case and, therefore, his counsel's failure to factually object to the application of the enhancement constitutes deficient performance.  Id.

The movant argues that there is a reasonable probability that there would have been a different outcome in his sentencing if his counsel had provided a "proper and legally sufficient objection."  Id. at 7. The business of laundering funds enhancement caused Mr. Petithomme's sentencing guidelines to have a total offense level of 25 and a sentencing guidelines range of 57 to 71 months imprisonment, rather than a total offense level of 21 and a sentencing guidelines range of 37 to 46 months. Id.  Specifically, Mr. Petithomme contends that "it is reasonable to assume that…the Court would have sentenced movant to the low-end of the guideline range of 37 to 46 months" if the four-point enhancement had not been applied.  Id. at 5 n.1.

In its Answer to the Motion, the Government argues that Mr. Petithomme's claim fails to meet the standard set forth in Strickland. Answer at 7-12 (DE# 8, 4/22/20).  Specifically, the Government argues that the movant cannot satisfy the prejudice prong under Strickland because based on "the uncontested facts of the factual proffer and the [PSI], the business of laundering funds enhancement applies" and, therefore, the movant "cannot show a reasonable probability of a different outcome." Id. at 9.  Additionally, the Government argues that the movant also failed to

12

establish the first prong in <u>Strickland</u>, which requires a showing of deficient performance by Mr. Petithomme's counsel. <u>Id</u>. at 12. Specifically, the Government contends that Mr. Handfield's performance was not deficient because "he raised an objection to the business of laundering enhancement and argued that enhancement before the district court." <u>Id</u>.

The Government argues that the movant fails to establish the prongs set forth by <u>Strickland</u> because he has failed to show prejudice from his prior counsel's actions and his prior counsel's performance was not deficient. Answer at 8 (DE# 8, 4/22/20). First, the Government contends that the movant was not prejudiced by the manner in which counsel objected to the enhancement because the factual proffer—to which the movant agreed under oath during the plea colloquy—as well as the PSI provided sufficient facts to satisfy many of the factors set forth under USSG § S21.1 to support the business of laundering funds enhancement. <u>Id</u>. at 9-10. Additionally, the Government argues that the movant's prior counsel's performance was not deficient because his prior counsel "raised an objection to the business of laundering enhancement and argued that enhancement before the district court." <u>Id</u>. at 12. The Court agrees.

In his Reply, the movant contends that the facts contained within the factual proffer are insufficient on their face to support the business of laundering funds enhancement. Reply at 3-4 (DE# 13, 5/13/20). The movant fails to cite a single case to support this argument. Instead, the movant relies on his Employment Record in paragraphs 92 and 93 of the PSI to show that he was involved in many other businesses. The movant argues that

> [b]ased upon the very few sporadic transactions, which amount to the totality of Movant's company[ies'] participation as set forth in the [PSI], to wit: October of 2015; October of 2016; April of 2017, and August of 2017, how can it be said that the Movant was 'in the business of laundering funds." In other words, four (4) transactions using his companies over the course of two (2) years certainly is not indicative of someone "in the business of laundering funds."

13

Id. at 6 (emphasis in original). The movant attempts to distinguish the money laundering transactions involving SJ Vanity, Inc. (May 2018), Events on the Go, Inc. (May and June 2016), Event to Go, Inc. (October 2016) and Polis Enterprise, Inc. (October 2017) because these companies were not incorporated or controlled by the movant.[3] Id. at 7.

As the movant concedes in his Memorandum, USSG §2S1.1, Application Note 4(A) sets forth a non-exclusive list of factors that may indicate that the defendant was in the business of laundering funds," which include whether: (i) the defendant regularly engaged in laundering funds; (ii) the defendant engaged in laundering funds during an extended period of time; (iii) the defendant engaged in laundering funds from multiple sources, and (iv) the defendant generated a substantial amount of revenue in return for laundering funds. Memorandum at 5-6 (DE# 3, 4/8/20).

The Government filed a Stipulated Factual Proffer that it read at the change of plea hearing, which was signed by the movant and which the movant agreed that the Government could prove at trial when asked by the court during the change of plea hearing. See Stipulated Factual Proffer (DE# 84, 4/29/19) ("The parties agree that these facts, which do not include all facts known to the United States and PETITHOMME, are sufficient to prove beyond a reasonable doubt PETITHOMME's guilt with respect to Counts 1 and 5 of the Superseding Indictment."); see also Plea Tr. at 30-35 (DE# 159, 9/19/19).

By his own admission in the Stipulated Factual Proffer, Mr. Petithomme used accounts in the names of Mondiales Enterprise, Inc., PDU Enterpri$e Inc. (a/k/a PDU Enterprise Inc.), PDU Global LLC, and Millenial Development Inc. to launder victim funds. Stipulated Factual Proffer

---

[3] The movant admitted in his Acceptance of Responsibility statement that he opened a bank account in the name of SJ Vanity, Inc. using an alias, J.A. See PSI at ¶ 57 (CR-DE# 99, 6/13/19).

14

at 4 (CR-DE# 84). Thus, even Mr. Petithomme's "legitimate" business was part of his money laundering operation.

The PSI concluded that the movant's offense conduct as described in the Stipulated Factual Proffer as well as the PSI satisfied four of the six non-exclusive business of laundering funds enhancement factors. First, the movant regularly engaged in laundering funds by participating in numerous transactions involving bank accounts of at least four of his own companies. Second, the movant engaged in laundering funds during an extended period between 2015 and 2018. Third, the movant engaged in laundering funds from multiple sources, that is SJ Vanity, Inc., Events on the Go, Inc., Event to Go, Inc. and Polis Enterprise, Inc., and that he received victim funds that had been laundered through co-conspirators' accounts and transferred victim funds to co-conspirators and abroad. Fourth, the movant generated a substantial amount of revenue in return for laundering funds.[4] The Government argues that Mr. Petithomme's purported involvement in a "legitimate" business does not preclude him from being in the business of money laundering. Notably, for tax years 2016 and 2017, while he was laundering and retaining victim proceeds, Mr. Petithomme filed income tax returns claiming gross income of only $9,944 each year. Id. at 4 (citing PSI at ¶ 97).

The movant laundered victim funds for over two and one-half years from October 2015 through June 2018. The movant laundered, or attempted to launder, funds from victim Y.T.V. in October 2015, from victim L.P. in October 2016, from victim R.T. in April 2017, from victim S.H.

---

[4] The movant agreed that the value of laundered funds for which he should be held accountable was between 1.5 and 3.5 million dollars. In its Response in Opposition to Defendant Petithomme's Objections to the Presentence Investigation Report at 4 (DE# 115, 7/15/19), the Government argues that the movant retained at least $140,000 of funds that are traceable to the victim funds that flowed through his accounts. That amount included over $30,000 in cash withdrawals, a $15,000 check written to himself, and payments to Mercedes Benz, American Airlines, Jet Blue and John Varvatos (a luxury menswear designer). Id.

15

in August 2017, from victim N.G. in August 2017, and from victim F.A.T. in May 2018. Not only did the movant receive funds from multiple victims, but he also served as the direct and intermediate recipient of victim funds in the money laundering conspiracy, thereby laundering funds from multiple sources.

The Government relies on the following unpublished cases to support the business of laundering funds enhancement: United States v. Lazo, 491 F. App'x 942, 943-44 (11th Cir. 2012) (unpublished) (affirming application of business of money laundering enhancement where three of the six factors applied and the defendant laundered funds during a four-month period); United States v. Pendleton, 761 F. App'x 339, 355 (5th Cir. 2019) (unpublished) (affirming application of business of money laundering enhancement where defendant laundered funds from several drug dealers over the period of a couple of years and made a substantial amount of money); and United States v. Arledge, 524 F. App'x 83, 88 (5th Cir. 2013) (unpublished) (affirming application of business of money laundering enhancement where defendant laundered from numerous customers over a two-year period). In Lazo, the Eleventh Circuit explained that "Section 2S1.1(b)(2)(C) was added to the Guidelines based on a determination that … defendants who routinely engaged in laundering funds on behalf of others and gained financially from such transactions, warranted substantial additional punishment because they encouraged the commission of additional criminal conduct." Lazo, 491 F. Appx' at 944 (citing U.S.S.G. App. C., Amend 634, Reason for Amend.) (unpublished).

The movant fails to distinguish the Government's cases and fails to cite a single case to support his position that his prior counsel's performance was deficient because counsel failed to raise a factual objection to the application of the business of laundering funds enhancement.

Similarly, Mr. Petithomme has failed to cite a single case to support his argument that a defendant cannot be in the business of laundering funds while he has a "legitimate" business.

Under the totality of the circumstances, the undersigned agrees that the business of laundering funds enhancement applies. The Stipulated Factual Proffer, the movant's testimony during the plea hearing wherein he agreed that the Government could prove the proffered facts beyond a reasonable doubt to convict him of Count 1 and Count 5 of the Superseding Indictment, and the PSI reveal that the movant (i) regularly engaged in laundering funds (ii) during an extended period of time; (iii) from multiple sources, and (iv) he generated a substantial amount of revenue in return for laundering funds.  The movant's prior counsel's failure to raise a factual objection to the business of laundering funds enhancement does not constitute deficient performance where, as here, the movant stipulated to facts that satisfy four of the six non-exhaustive list of factors that warrant application of the enhancement.  Additionally, the movant has failed to show prejudice, that is, that there is a reasonable probability that the outcome would have been different (i.e. a lower sentence).  Because the movant has failed to satisfy either prong of Strickland, this Court should deny Mr. Petithomme's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (DE# 1, 4/8/20)**.**

## V.     RECOMMENDATION

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Movant, Loudy Petithomme's Notice of Request for Evidentiary Hearing upon His Motion to Vacate, Set Aside, or Correct Sentence pursuant to Title 28 U.S.C. § 2255. (DE# 11, 4/27/20) be **DENIED**. Additionally, the undersigned respectfully **RECOMMENDS** that Mr. Petithomme's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (DE# 1, 4/8/20) be **DENIED.**

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1191-1192 (11th Cir. 2020); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 24th day of May, 2021.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE